# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

VINCENT MARK SANTANA,

    Petitioner,

vs.

D. W. NEVEN, et al.,

    Respondents.

Case No. 2:08-CV-00573-KJD-(LRL)

**ORDER**

    Before the court are the amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (#11) and respondents' answer (#41). The court finds that petitioner is not entitled to relief, and the court denies the petition.

    After a jury trial in the Eighth Judicial District Court of the State of Nevada, petitioner was convicted of failure to change his address by a convicted sex offender. The state court determined that petitioner was a habitual criminal, and the court sentenced petitioner to life imprisonment without the possibility of parole. Ex. D (#25). Petitioner appealed. Initially, the Nevada Supreme Court affirmed the judgment on all grounds. Ex. I (#25). On rehearing, the Nevada Supreme Court determined that petitioner's sentence was so excessive that it was cruel and unusual punishment, and the Nevada Supreme Court remanded the matter for re-sentencing. Ex. M (#25). The district court then sentenced petitioner to life imprisonment with the possibility of parole. Ex. W (#25).

    Petitioner then filed a post-conviction habeas corpus petition in the state district court. Ex. X (#26). The state district court denied the petition. Ex. Z (#26). Petitioner appealed, and the Nevada Supreme Court affirmed with a direction to correct a clerical error in the judgment of

conviction. Ex. BB (#26). The state district court then entered a second amended judgment of conviction. Ex. DD (#26).

Petitioner then commenced this action. Respondents moved to dismiss the amended petition (#11). The court granted that motion in part, finding that grounds 2 and 3 of the amended petition were untimely because they did not relate back to the effective filing date of the original petition (#7). Order (#38). Reasonable jurists would not find this conclusion to be debatable or wrong, and the court will not issue a certificate of appealability for the dismissal of grounds 2 and 3. Grounds 1 and 4 through 6 remain.

"A federal court may grant a state habeas petitioner relief for a claim that was adjudicated on the merits in state court only if that adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,'" Mitchell v. Esparza, 540 U.S. 12, 15 (2003) (quoting 28 U.S.C. § 2254(d)(1)), or if the state-court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

> A state court's decision is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." A state court's decision is not "contrary to . . . clearly established Federal law" simply because the court did not cite our opinions. We have held that a state court need not even be aware of our precedents, "so long as neither the reasoning nor the result of the state-court decision contradicts them."

Id. at 15-16. "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal quotations omitted).

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

1  Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

2      The petitioner bears the burden of proving by a preponderance of the evidence that he is
3  entitled to habeas relief. Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).

4      When petitioner was charged, Nev. Rev. Stat. § 179D.470 (2001) stated, in relevant part:

5      1.     If a sex offender changes the address at which he or she resides, including moving
from this State to another jurisdiction, or changes the primary address at which the sex
6  offender is a student or worker, not later than 48 hours after changing such an address, the
sex offender shall provide the new address, in person, to the local law enforcement agency in
7  whose jurisdiction the sex offender now resides and, in person or in writing, to the local law
enforcement agency in whose jurisdiction the sex offender formerly resided and shall
8  provide all other information that is relevant to updating the record of registration, including,
but not limited to, any change in the sex offender's name, occupation, employment, work,
9  volunteer service or driver's license and any change in the license number or description of a
motor vehicle registered to or frequently driven by the sex offender.
10

11      For a while, petitioner followed these requirements. Detective Charles Tartan of the sex
12  offender detail of the Las Vegas Metropolitan Police Department testified about petitioner's
13  notifications of changes in address. For the times and locations that are relevant to this action, on
14  May 21, 2001, petitioner changed his registered address to 2119 Cochran St., Las Vegas. Then, on
15  December 4, 2001, petitioner changed his registered address to 2500 Teddy Dr., Apt. 23, Las Vegas.
16  Petitioner did not notify the police of any changes in address after December 4, 2001. Ex. HH, pp.
17  64-65 (#42). The house at 2119 Cochran St. was where his mother-in-law lived.

18      Petitioner then stopped informing the police of changes in address. According to the
19  apartment manager on Teddy Drive, petitioner and his wife leased an apartment on December 3,
20  2001. Their lease expired on January 31, 2002, and they actually were evicted on January 17, 2002.
21  Ex. GG, pp. 41-43 (#42). Even though petitioner had vacated the apartment, he never notified the
22  police of his change in address.

23      Early in the morning of February 14, 2002, police found petitioner's car a few houses away
24  from 2119 Cochran St. Police then went to 2119 Cochran St. They asked petitioner's mother-in-
25  law if they could search the house, and she consented. A patrol officer searched one bedroom. Next
26  to the bed, he found a makeshift bed on the floor. The bedroom had an attached bathroom,
27  accessible only from that bedroom. The officer searched that bathroom, and he found petitioner in
28  the shower behind the curtain. Ex. GG, pp. 25-28 (#42).

Subsequent investigations found more evidence that petitioner was living at 2119 Cochran St. on and before February 14, 2002. A detective found a bottle for prescription medication. Printed on the label were petitioner's name, 2119 Cochran St. as the address, and February 6, 2002 as the date. Ex. GG, pp. 15-16 (#42). A crime-scene analyst searched petitioner's car. He found a pink sheet from the parking citations office. On the sheet were petitioner's signature, 2119 Cochran St. as the address, and February 13, 2002 as the date. Ex. HH, pp. 55-56 (#42).[1]

All four remaining grounds are claims that petitioner's trial counsel, Gabriel Grasso, provided ineffective assistance. "[T]he right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 & n.14 (1970). A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

Strickland expressly declines to articulate specific guidelines for attorney performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the duty to advocate the defendant's cause, and the duty to communicate with the client over the course of the prosecution. 466 U.S. at 688. The Court avoided defining defense counsel's duties so exhaustively as to give rise to a "checklist for judicial evaluation of attorney performance. . . . Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." Id. at 688-89.

---

[1] The prosecution presented testimony from an employee of an automobile dealership, an employee of the Department of Motor Vehicles, and a police detective that petitioner gave 2119 Cochran St. as his address on November 8 and 16, 2001. Ex. GG, pp. 31, 35, 37-38 (#42). This evidence was not relevant to petitioner's guilt because on those dates 2119 Cochran St. was petitioner's registered address.

Review of an attorney's performance must be "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight." Strickland, 466 U.S. at 689. A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (citation omitted).

The Sixth Amendment does not guarantee effective counsel per se, but rather a fair proceeding with a reliable outcome. See Strickland, 466 U.S. at 691-92. See also Jennings v. Woodford, 290 F.3d 1006, 1012 (9th Cir. 2002). Consequently, a demonstration that counsel fell below an objective standard of reasonableness alone is insufficient to warrant a finding of ineffective assistance. The petitioner must also show that the attorney's sub-par performance prejudiced the defense. Strickland, 466 U.S. at 691-92. There must be a reasonable probability that, but for the attorney's challenged conduct, the result of the proceeding in question would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

If a state court applies the principles of Strickland to a claim of ineffective assistance of counsel in a proceeding before that court, the petitioner must show that the state court applied Strickland in an objectively unreasonable manner to gain federal habeas corpus relief. Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam).

Ground 1 is a claim that Grasso provided ineffective assistance because he did not object in open court to the prosecution's question of potential jurors whether they had children. The Nevada Supreme Court held:

> First, appellant claimed that his trial counsel was ineffective for failing to object to prejudicial inquiries by the prosecution during jury selection. Specifically, appellant claimed that his counsel should have objected when the prosecution inquired whether the potential jurors had any children. Appellant failed to demonstrate that he was prejudiced by his counsel's failure to object. The offense for which appellant was being tried did not involve a crime against a minor and appellant failed to demonstrate that the jurors selected to try his case were actually biased. Accordingly, we conclude that the district court did not err in denying this claim.

Ex. BB, p. 3 (#26) (footnote omitted). In the state-court proceedings, Petitioner did not show any prejudice, and he has not shown any prejudice here. Petitioner's theory was that the question would lead the jury to believe that his prior sexual offense was against a child, thus biasing the jury against him. The evidence, as outlined above, indicated that petitioner was living in his mother-in-law's house on and before February 14, 2002, and that petitioner had not notified the police of his new residence. The elements of violating § 179D.470 are simple and straightforward, and the evidence was more than sufficient for the jury to find petitioner guilty of violating § 179D.470. Petitioner has not demonstrated that any juror actually believed that petitioner's prior sexual offense was against a child. Furthermore, petitioner has not demonstrated, and the court sees no reasonable probability that the jury would have found petitioner not guilty of the charge if the jury knew that petitioner's prior sexual offense was against an adult. The Nevada Supreme Court's decision was a reasonable application of Strickland. 28 U.S.C. § 2254(d)(1).

Reasonable jurists might find this conclusion to be debatable, and the court will issue a certificate of appealability on this ground.

Ground 4 is a claim that Grasso provided ineffective assistance because Grasso did not let petitioner testify. On this issue, the Nevada Supreme Court held:

> Fourth, appellant claimed that his trial counsel was ineffective for refusing appellant's repeated requests to testify on his own behalf. Appellant failed to demonstrate that his counsel was deficient or that he was prejudiced. The decision on whether a defendant testifies in his own defense at trial is one for the defendant to make. The record reveals that the district court thoroughly advised appellant of his right to testify and the implications of doing so. Appellant stated that he understood his rights and informed the district court that he was not going testify. To the extent that appellant challenged his counsel's recommendation not to testify, counsel's [advice] was strategic in nature and appellant failed to demonstrate that he was prejudiced by counsel's advice. Accordingly, we conclude that the district court did not err in denying this claim.

Ex. BB, pp. 5-6 (#26) (footnotes omitted). The trial transcript confirms the Nevada Supreme Court's holding that the district court canvassed petitioner thoroughly on the right to testify and consequences of testifying. See Ex. HH, pp. 79-80 (#42). If petitioner wanted to testify, then he could have told the court of that desire and counsel's disagreement. Petitioner did not mention the issue at all.

Petitioner presents four reasons why he wanted to testify:

-6-

1.       To let the jury know that he was homeless;

2.       To testify that people at Las Vegas City Hall told him that he needed a permanent address to give them;

3.       To testify that he was unable to give them a permanent address because he had been evicted from his previous address (2500 Teddy Dr.); and

4.       To testify that his crime was not against a child but against an adult.

Amended Petition (#11), p. 7. The evidence presented at trial made the first three reasons irrelevant. The evidence showed that petitioner was living at 2119 Cochran St., not that he was homeless. Petitioner needed to notify the police that he was living at that address, and he did not so notify the police. As for the fourth reason, if petitioner told Grasso that he wanted to testify that his prior sexual offenses were not against children, then Grasso's advice to petitioner not to testify was strategic and sound. Direct examination would not have been the end of petitioner's testimony. If he testified that he did not commit any sexual offenses against children, then the prosecution could have asked petitioner about the details of his prior sexual offenses, and the evidence would have been admissible because petitioner opened the door. Petitioner was afraid that a question to potential jurors whether they had children would bias the jury against him; petitioner should have been more afraid that the details of the crimes that he actually committed would bias the jury against him even more. The Nevada Supreme Court applied <u>Strickland</u> reasonably. 28 U.S.C. § 2254(d)(1).

Reasonable jurists might find this conclusion to be debatable, and the court will issue a certificate of appealability on this ground.

Ground 5 is a claim that Grasso provided ineffective assistance because he did not ask for a continuance to let petitioner's mother-in-law testify that petitioner was not welcome at her home. On this issue, the Nevada Supreme Court held:

> Fifth, appellant claimed that his trial counsel was ineffective for failing to mover for a continuance to allow his mother-in-law to testify. Appellant asserted that his mother-in-law would have testified that appellant was not a resident at her home and appellant's squatting and storing of personal property at her home was without her knowledge or consent. Appellant failed to demonstrate that having his mother-in-law testify would have altered the outcome of the trial. The proposed testimony by appellant's mother-in-law would have been cumulative. Testimony was presented at trial that appellant's mother-in-law was not aware of and did not consent to have appellant sleeping in her home and storing personal property there. Accordingly, we conclude the district court did not err in denying this claim.

-7-

Ex. BB, p. 6 (#26). This was a reasonable application of Strickland for two reasons. First, as the Nevada Supreme Court noted, testimony at trial did indicate that petitioner was squatting in 2119 Cochran St. without the knowledge of his mother-in-law. Second, consent of the property holder is not a condition to the § 179D.470's requirement that petitioner notify the police department of a change in address. If petitioner was living at 2119 Cochran St. without the permission of his mother-in-law, as he alleges, then he still was living at 2119 Cochran St. The law required petitioner to tell the police where he was staying.

Reasonable jurists would not find this conclusion to be debatable or wrong, and the court will not issue a certificate of appealability for this ground.

Ground 6 is a claim that Grasso provided ineffective assistance because counsel refused to let petitioner's wife testify that petitioner was sneaking into her parents' home late at night to sleep. On this issue, the Nevada Supreme Court held:

> Sixth, appellant claimed that his trial counsel was ineffective for failing to call his wife as a witness. Appellant asserted that his wife would have testified that appellant was homeless and only spent an occasional night at her parents' home, without her parents' knowledge or consent. Appellant failed to demonstrate that having his wife testify would have altered the outcome of the trial. The issue presented for the jury to decide was whether appellant failed to timely file a change of address for his sex offender registration. Testimony was presented that even if appellant were homeless he was still required to change his address to indicate that he was transient. Further, overwhelming evidence was presented that appellant moved from his registered address, never filed a change of address and during the time in question repeatedly identified his mother-in-law's address as his own. Accordingly, we conclude the district court did not err in denying this claim.

Ex. BB, pp. 6-7 (#26). As with ground 5, it does not matter for the purposes of the law whether petitioner was living at 2119 Cochran St. with the permission of his mother-in-law. The law simply requires that petitioner tell the police where he is living. The evidence at trial showed that petitioner was living at 2119 Cochran St. and that petitioner did not tell the police of his residence. Testimony that petitioner was sneaking into the house would have had no effect upon the verdict. The Nevada Supreme Court applied Strickland reasonably. 28 U.S.C. § 2254(d)(1).

Reasonable jurists would not find this conclusion to be debatable or wrong, and the court will not issue a certificate of appealability for this ground.

IT IS THEREFORE ORDERED that the amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (#11) is **DENIED**. The clerk of the court shall enter judgment accordingly.

IT IS FURTHER ORDERED that a certificate of appealability is **GRANTED** on the following issues;

1. Whether trial counsel provided ineffective assistance by not objecting in open court to the prosecution's question to potential jurors about whether they had children; and

2. Whether trial counsel provided ineffective assistance by advising petitioner that he not testify at trial.

DATED: August 18, 2011

_____
KENT J. DAWSON
United States District Judge